# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 09-3064

———————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Anthony Charboneau, III, | * | |
| | * | |
| Defendant - Appellant. | * | |

———————

Submitted: May 14, 2010
Filed: July 30, 2010

———————

Before RILEY, Chief Judge, LOKEN and MURPHY, Circuit Judges.

———————

LOKEN, Circuit Judge.

A jury convicted Anthony Charboneau of sexual abuse of a minor and abusive sexual contact in Indian country in violation of 18 U.S.C. §§ 2243(a), 2244(a)(3), and 1153. Charboneau appeals the conviction, arguing that the district court[1] committed plain error when it permitted a government witness to violate Charboneau's Sixth Amendment rights by referring to a forensic interview and medical report of one of the child victims. As the child declarant testified at trial and the medical report was not introduced into evidence, the Confrontation Clause as construed in Crawford v.

———————

[1]The HONORABLE PATRICK A. CONMY, United States District Judge for the District of North Dakota.

Washington, 541 U.S. 36 (2004), and in cases applying Crawford was not implicated by this testimony. Accordingly, we affirm.

The government's first trial witness was FBI Special Agent Aaron Kellerman, who served as case agent for this investigation and prosecution. Agent Kellerman testified without objection that he had taken one of the victims, D.C., to the Red River Children's Advocacy Center for a forensic interview during which D.C. made "disclosures" and identified Anthony Charboneau as the "perpetrator." When the prosecutor pressed for details of the disclosures, the district court sustained defense counsel's hearsay objections, as well as unrelated hearsay objections by the prosecutor during defense counsel's cross examination of Agent Kellerman. At the end of his testimony, the district court explained its rulings to the jury:

> And whenever there's a witness going to be called who has supposedly said it, let's hear it from the witness and not from someone who said they heard the witness say it. Simple as that.

D.C. and the other victim, J.B., who were thirteen and twenty years old at the time of trial, were the government's third and fourth trial witnesses.

On appeal, Charboneau argues that Agent Kellerman's testimony violated Charboneau's Sixth Amendment rights as construed in Crawford, which held that the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." 541 U.S. at 53-54. Charboneau correctly notes we have held that a child victim's statements during a forensic interview by a social worker may be "testimonial" under Crawford. Bobadilla v. Carlson, 575 F.3d 785, 791-93 (8th Cir. 2009), cert. denied, 130 S. Ct. 1081 (2010). But the child victim did not testify in Bobadilla, whereas D.C. testified at Charboneau's trial. Crawford did not alter the principle that the Confrontation Clause "is satisfied when the hearsay

declarants, here the alleged child victims, actually appear in court and testify in person." United States v. Spotted War Bonnet, 933 F.2d 1471, 1473 (8th Cir. 1991), cert. denied, 502 U.S. 1101 (1992). Thus, as in United States v. Rodriguez, 484 F.3d 1006, 1013-14 (8th Cir.), cert. denied, 552 U.S. 890 (2007), there was no Confrontation Clause error, much less plain error. When a child victim testifies at trial, "Crawford is inapplicable." United States v. Wipf, 397 F.3d 677, 682 n.2 (8th Cir.), cert. denied, 546 U.S. 835 (2005).

When the government rested, Agent Kellerman was recalled by the defense. After Kellerman briefly testified concerning his conversation with D.C.'s mother after D.C.'s forensic interview, the prosecutor on cross examination asked him to describe the forensic interview process. Kellerman related that a medical examination sometimes follows the interview. When asked without objection if there was an exam after D.C.'s interview, he replied, "I think there was a follow-up medical exam, yes."

On appeal, Charboneau argues it was plain error to admit this testimony because the "veiled reference" to a medical report violated the Confrontation Clause as construed in Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009). That case held that sworn certificates showing the results of scientific drug tests were testimonial statements, and therefore the analysts were witnesses the defendant has a Sixth Amendment right to confront. Id. at 2532. However, even if medical reports could be testimonial under Melendez-Diaz, an issue we need not consider, neither the medical report nor any out-of-court statement by the examining physician was admitted into evidence. Thus, there was no Confrontation Clause error. See United States v. Tucker, 533 F.3d 711, 714 (8th Cir. 2008).

Finally, Charboneau argues that his trial attorneys provided ineffective assistance when they permitted "multiple references to a forensic interview which were meant to bolster the heavily impeached testimony of D.C." As in most cases, we conclude that the record is not sufficiently developed to take up this issue on direct

appeal.  See United States v. Lee, 374 F.3d 637, 654 (8th Cir. 2004), cert. denied, 545 U.S. 1141 (2005).

      The judgment of the district court is affirmed.

_____